## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JAMES E. BUTLER,                                                                                  PLAINTIFF
ADC #145762

v.                                5:12CV00295-JLH-JTK

CONNIE HUBBARD, et al.                                                  DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following partial recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Corizon, Inc., Connie Hubbard, and Estella Murray (Doc. No. 27). Plaintiff filed a Response in opposition to the Motion (Doc. No. 34).

Plaintiff James Butler is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by Defendants. Plaintiff claims Defendants delayed treatment for kidney stones which resulted in the loss of one of his kidneys. Plaintiff asks for damages from Defendants.[1]

### II. Facts

---

[1] Defendants Carswell and Massey were dismissed for failure to state a claim upon which relief may be granted on September 27, 2012 (Doc. No. 7). Presently pending before the Court is a Proposed Findings and Recommendation that Defendant Anderson be dismissed for failure to obtain service (Doc. No. 38).

### A. Plaintiff's Amended Complaint

Plaintiff alleges he suffered from pain caused by kidney stones which would not pass, and that Defendants failed to take action to remove or break up the stones until his kidney died. (Doc. No. 4, p. 4.) Plaintiff states he began suffering from pain on February 3, 2011, and was not seen until February 5, 2011, when he was prescribed Tramadol. (Id., p. 5.) He was again seen on February 7, 2011, at which time Defendant Anderson verbally ordered pain medication and a urine dipstick. (Id.) Defendant Murray treated Plaintiff on February 12, 2011, and reviewed his lab work, but failed to taken any action to help Plaintiff, other than to order an x-ray. (Id., p. 6.) He again saw Defendant Murray on February 19, 2011, for a follow-up on the x-rays which showed the blockage caused by the kidney stones. (Id.) Plaintiff alleges Murray should have sent him to the UAMS hospital. (Id.) Defendant Hubbard saw Plaintiff on February 19, 2011, and wrote an order and referral for Plaintiff to be seen at UAMS. (Id., p. 7.) Despite the fact that Plaintiff suffered from an 80% blockage, Defendant Hubbard would not send Plaintiff to the hospital. (Id.)

Plaintiff next was seen on March 24, 2011, for pain, at which time Defendant Anderson verbally prescribed Tramadol. (Id., p. 8.) Anderson called the Varner Unit on March 28, 2011, to notify them that Plaintiff was scheduled for an appointment at UAMS on April 4, 2012. (Id.) The appointment was cancelled and rescheduled for April 14, 2011. (Id.) According to the response Plaintiff received to the grievance he filed about the delay, the cancellations and delays were caused by UAMS and not by Corizon. (Id.) Plaintiff claims, however, that Corizon did have control over a decision to send him to the hospital, and Defendants' failure to do so resulted in the loss of his kidney. (Id., p. 9.) Plaintiff was taken to UAMS for an appointment on May 11, 2011, at which time the physician recommended that Plaintiff's kidney be removed because it was no longer

working. (Id.) Plaintiff alleges that Defendants' delay in treating him properly for the kidney stones resulted in the removal of his kidney. (Id.) Plaintiff also alleges Defendants' deliberate indifference resulted in an additional delay in removing his kidney, until November 1, 2013, which subjected him to a high risk of infection. (Id., p. 10.)

Plaintiff alleges Defendant Corizon operates pursuant to a custom, policy, and practice of allowing its employees to disregard excessive risk to the inmates' health or safety in order to avoid high costs, and that such resulted in a wanton infliction of pain to him. (Id.) He also alleges Defendants Murray and Hubbard acted with deliberate indifference to his serious medical needs because they knew of his kidney stone problems, yet delayed appropriate treatment. (Id., p. 11.)

### B. Medical Records

According to the medical records submitted by the Defendants and the affidavit of Dr. Robert Floss, the regional medical director of Corizon, Plaintiff suffered from kidney stone disease for many years, and was treated at Hot Springs Mercy Hospital in June, 2009, for an obstruction which was not resolved. (Doc. No. 29-1, pp. 5, 51-53; Doc. No. 29-7.) Plaintiff submitted a sick call at the Varner Unit on February 4, 2011, complaining about a right kidney stone, and was seen in the infirmary the following day. (Doc. No. 29-1, pp. 10-11.) The nurse who treated him noted no nausea or vomiting and normal vital signs. (Id., p. 11.) She contacted Defendant Hubbard by telephone, who instructed her to administer Tramadol (a pain medication) and arrange for an x-ray of Plaintiff's kidneys, ureter and bladder. (Id.) Plaintiff returned to the infirmary on February 7, 2011, again with no nausea or vomiting, but complaining about pain. (Id., p. 12.) Defendant Anderson verbally prescribed naproxen and directed the nurse to perform a urine dip stick test and schedule Plaintiff to see the Advanced Nurse Practitioner (ANP). (Id.) An abdominal x-ray taken

on that same day showed nothing wrong with the right kidney, but revealed a shadow over the left kidney. (Id., p. 14.)

Defendant Murray,[2] an ANP, saw Plaintiff on February 12, 2011, to review the prior month's lab work. (Id., p. 15.) There is no notation in the medical records of a discussion or mention of kidney stones or kidney pain. (Doc. No. 29-1, pp. 3, 15.) Murray recalled Plaintiff to the infirmary on February 19, 2011, to review the February 7 x-ray report. (Id., p. 19.) She noted the radiologist's report of a likely stone in the left kidney, and prepared a consultation request for Plaintiff to receive specialty urology services at University of Arkansas for Medical Sciences Hospital (UAMS). (Id., p. 20.) The consultation request was approved on March 3, 2011. (Id., p. 21.)

Plaintiff returned to the infirmary on March 24, 2011, complaining of severe pain, but was noted to ambulate without assistance and with no signs of distress. (Id., pp. 3, 49.) Dr. Anderson verbally ordered Tramadol, and the nurse scheduled an intravenous pyelogram.[3] (Id., p. 22.) According to the results of that test, multiple stones were located within the right kidney, with the largest located at the junction where the ureter connects to the bladder. (Id., p. 24.) An appointment was then scheduled with a urologist on April 4, 2011, but was cancelled due to an ADC transportation issue, in addition the urologist's surgery schedule conflict. (Id., pp. 4, 49.) The next scheduled appointment, April 14, 2011, was cancelled due to the illness of the urologist, and Plaintiff was not seen at UAMS until April 20, 2011. (Id., pp. 4, 25-29, 49-50.) At that visit, it was noted that Plaintiff had no pain. (Id., p. 25.) The radiologist reported calcifications to the right of

---

[2] Since the filing of the lawsuit, Defendant Murray has changed her name to Bland. The Court will refer to her by "Murray," the name under which she was sued.

[3] An x-ray examination of the kidneys, bladder and ureters. MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/003782.htm (last visited September 18, 2013).

the lumbar spine, but that they were probably not urinary tract stones, and the urologist also referred to the results of the earlier intravenous pyelogram. (Id., pp. 27, 29.) The urologist noted that Plaintiff is a chronic stone-passer, having had lithotripsy[4] three times and ureteroscopy[5] twice, and assessed Plaintiff as having a possible non-functioning right kidney. (Id., p. 28.)

After receiving the urologist's report, Defendant Hubbard prepared a consultation request based on the UAMS recommendation to schedule Plaintiff for a followup visit in two-three weeks and a CT scan. (Id., p. 30.) The consultation was approved on May 2, 2011, and when Plaintiff returned to UAMS on May 11, 2012, he reported no pain. (Id., pp. 31-32, 34-30.) Several large stones were seen in the right ureter with swelling of the kidney. (Id., pp. 35-36.) A nuclear medicine study was performed and indicated a function of 9.6 in the right kidney and 90.4 in the left. (Id., pp. 37-38.) After the urologist discussed the matter with Plaintiff, he agreed to have his kidney removed (nephrectomy). (Id., p. 39.) Defendant Hubbard also saw Plaintiff on that date as part of a chronic care visit and she completed the consult request for the removal of the right kidney. (Id., pp. 41, 45.) Following several tests, Plaintiff's right kidney was removed on November 1, 2011. (Id., p.5.)

Dr. Floss noted that the medical records do not reflect any urinary system problem between the May 11, 2011 visit to UAMS and the November 1, 2011 surgery, and stated that the surgery was elective, to prevent the possibility of future infection, and was not urgent because the kidney was

---

[4] A medical procedure which uses shock waves to break up stones in the kidney, bladder or ureter. MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/007113.htm (last visited September 18, 2013).

[5] A medical procedure used for stones in the ureter. National Kidney Foundation, http://www.kidney.org/atoz/content/kidneystones_Ureteroscopy.cfm (last visited September 18, 2013).

not functioning. (Id., p. 6.) Floss stated Plaintiff received appropriate medical care throughout the process, noting that the x-rays which were taken during this time were confusing because they did not reveal renal shadows or calcification on the right kidney. (Id.) In addition, Plaintiff's normal vital signs and lack of nausea and vomiting did not present the appearance of an urgent or emergent situation. (Id.)

### III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Exhaustion

#### 1) Defendants' Motion

Defendant Hubbard moves to dismiss Plaintiff's allegations against her based on his failure

to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Defendant states that Plaintiff fully exhausted only one grievance, VU-11-00195, which was filed prior to the time she treated him and which does not specifically name any individual, despite the ADC grievance requirement to be "specific as to...personnel involved...." (Doc. No. 29-6, p. 5.) Defendant states the PLRA exhaustion process requires inmates to complete the grievance process as specified by prison policy prior to filing suit. Jones v. Bock, 549 U.S. 199, 218 (2007). Although Plaintiff's grievance was processed even though he failed to name personnel involved, Defendant states that the fact that she had not personally treated Plaintiff at the time the grievance was filed should limit his ability to name her in this lawsuit. Defendant cites Champion v. Akins, where the United States Court of Appeals for the Eighth Circuit recently held that an inmate who referred to two defendants in his grievance did not exhaust as to them because he did not state in the grievance how they were involved in the incidents at issue. No. 12-2467, 498 Fed.Appx. 670, 2013 WL 656797 (8th Cir. February 25, 2013) (unpublished opinion).

    **2)    Plaintiff's Response**

In Response, Plaintiff states that he properly filed and exhausted one grievance as to the issue of his complaint, and that he should not be required to submit multiple grievances about the same issue.

    **3)    Analysis**

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813

(E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." In addition, the United States Court of Appeals for the Eighth Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000). In Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." (Emphasis in original.) Finally, in Jones v. Bock, 549 U.S. at 218, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

However, the United States Court of Appeals for the Eighth Circuit recently ruled that if prison officials decide a procedurally-flawed grievance on the merits, they effectively waive the argument that an inmate failed to exhaust because he did not comply with the grievance procedures. In Hammett v. Cofield, 681 F.3d 945 (8th Cir. 2012), an inmate relied on grievances which were not exhausted or which were filed outside of mandatory time limits. The Court decided, however, that the "PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed

9

...
...

grievance on the merits." 681 F.3d at 947. This line of reasoning was extended to an exhausted grievance filed by an inmate who failed to comply with prison procedures requiring that defendants be specifically named, in Bower v. Kelley, 494 Fed.Appx. 718, 2012 WL 6199266 (8th Cir. 2012).

In this case, Defendant Hubbard acknowledges the Bower decision, but relies on the subsequent decision in Champion to support her claim that since the medical records show that at the time Plaintiff filed his grievance she had not seen Plaintiff or personally treated him, the grievance should not be considered exhausted as to her. However, Hubbard admits in her Declaration (and the medical records support such), that she verbally instructed a nurse on February 5, 2011, to prescribe Plaintiff Tramadol and order x-rays. (Doc. No. 29-3; Doc. No. 29-1, p. 11.) In addition, in the response to Plaintiff's grievance, Hubbard's verbal order for Tramadol and x-rays is reflected (although Hubbard is not specifically named). (Doc. No. 2, p. 9.) The Court finds that these references are sufficient to consider Plaintiff to have exhausted his administrative remedies as to Hubbard, especially since the grievance was processed to completion, despite his failure to specifically identify the individuals involved.

**B.     Deliberate Indifference**

**1)     Defendants**

Defendants next state that Plaintiff's claims against them fail to support an Eighth Amendment violation, because he cannot show that they acted with deliberate indifference to his serious medical needs, citing Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006.) Defendants note that a disagreement with the medical provider's decisions and judgment fails to support a constitutional violation. Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007). In addition, Plaintiff received continuous care following his first and only sick call

submission on February 4, 2011, and neither Hubbard nor Murray were responsible or authorized to schedule in-house or outside appointments. (See Doc. Nos. 29-2, 29-3.) Defendant Murray states that she saw Plaintiff on two occasions, and on the first occasion, no mention was made of kidney pain or problems. (Doc. No. 29-2). On the second visit, on February 19, 2011, she noted x-ray results which showed a kidney stone in Plaintiff's left kidney, and prepared a consultation request for UAMS urology. (Id.) She also noted that the situation was not urgent. (Id.)

As noted earlier, Defendant Hubbard verbally prescribed pain medication and x-rays to Plaintiff on February 5, 2011, but did not personally examine Plaintiff until May 11, 2011. (Doc. No. 29-3; Doc. No. 29-1, pp. 11, 41-45.) In addition, in Plaintiff's deposition he stated he sued Defendant Murray because she was responsible for getting him the treatment he needed, but that he could not remember when he saw Defendant Hubbard. (Doc. No. 29-4, pp. 5-6.) He also stated he sued Corizon because ultimately it is responsible for the medical care furnished by the doctors and nurses, and because its' policies caused the delay in his treatment. (Id., pp. 8-9.) Plaintiff added he did not know which policy was involved or if one of the Defendants actually caused the delay in his treatment. (Id., p. 9.) Based on this testimony, Defendants state Plaintiff cannot show that they acted with deliberate indifference to his serious medical need.

        **2)**       **Plaintiff's Response**

In Response, Plaintiff states that since Hubbard authorized the pain medications on February 5, 2011, she was aware of his problem from the outset, and that Defendant Murray should have notified her of his problems after viewing the x-ray. Murray further ignored his situation when she saw him on February 19, 2011, despite her recommendation that he see a urologist. He states that his kidney probably shut down about this time due to their delays in sending him to the hospital.

He claims all Defendants were aware of his on-going medical condition and were responsible for the delays in treatment. He also states Defendant Corizon is liable because it ultimately makes the decisions regarding medical care**.**

    **3)    Analysis**

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

Having reviewed the parties' submissions and the medical evidence, the Court finds as a matter of law that Plaintiff fails to support his claim of deliberate indifference against Defendants.

It is clear from the medical records that Plaintiff was continuously treated for his complaint, beginning with his first sick call on February 4, 2011. There is no indication in the medical records that Plaintiff's situation was an emergent one, and Plaintiff does not deny that he has a long history of kidney stone and related problems. (Doc. No. 29-1, pp. 51-53; Doc. No. 29-7.) Plaintiff also does not deny that he did not complain to the medical personnel or otherwise appear at the infirmary with any complaints between February 19, 2011, and March 24, 2011. In addition, during that time, Defendant Murray submitted a consult request for Plaintiff to be seen by a urologist. (Doc. No. 29-1, p. 20.) Plaintiff also does not deny that the appointments which were cancelled in April were cancelled by the urologist, and although he claims that he should have been sent to the hospital before that time, there is no evidence in the record of an emergent situation or of knowledge by Defendants of such. Furthermore, as noted by Dr. Floss, the x-rays which were taken of the Plaintiff actually reflected no problem with the right kidney, and possible kidney stones in the left kidney. (Doc. No. 29-1, p. 6.) There is no evidence that Defendants were responsible for any delays in scheduling appointments, and there also is no evidence that Defendants acted with deliberate indifference to his medical situation. Plaintiff admitted in his deposition that the pain disappeared in March, and Dr. Floss indicated that the removal of his kidney was an elective procedure, to prevent the possibility of future infection. (Doc. No. 29-4, p. 4; Doc. No. 29-1, p. 6.) Plaintiff presents no evidence that any delay in the actual removal of his kidney was caused by any of the Defendants, and he does not provide any evidence of harm with that delay. Finally, Plaintiff presents no evidence of a Corizon policy which would support a finding of liability, as set forth in Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-6 (8th Cir. 1993). Rather, he appears to sue Corizon as the supervisor, or employer, of the medical staff who treated him, which is not applicable

to actions filed pursuant to § 1983.  See Glick v. Sargent, 696 F.2d 413, 414-5 (8th Cir. 1983).

**IV.     Conclusion**

IT IS, THEREFORE, RECOMMENDED that the Motion for Summary Judgment filed by Defendants Corizon, Hubbard, and Murray (Doc. No. 27) be GRANTED, and that Plaintiff's claims against them be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 20th day of September, 2013.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE